```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
WILSON LOJAN,                       :
                                    :
                  Plaintiff,        :    12 cv. 0320 (LAP)
                                    :    Memorandum & Order
            v.                      :
                                    :
                                    :
SPENCER CRUMBSIE, WESTCHESTER       :
COUNTY, and C.O. JANE DOE           :
                                    :
                  Defendants.       :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 02/01/2013

**LORETTA A. PRESKA**
**CHIEF UNITED STATES DISTRICT JUDGE**

Plaintiff Wilson Lojan ("Plaintiff") brought this action against defendants Spencer Crumbsie, Westchester County, and Correctional Officer ("C.O.") Jane Doe alleging excessive force and a failure to protect under 42 U.S.C. § 1983, as well as state law claims for negligence, gross negligence, respondeat superior, and a violation of N.Y. Correction L. §§ 137(5) & 500-k. Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Westchester County has moved to dismiss the First Amended Complaint for failure to state a claim on which relief could be granted as to the County and Doe.[1] For the reasons

---

[1] The County is not representing defendant Spencer Crumbsie, who - despite being served - has not filed any responsive pleadings in this action through counsel or pro se. (See Dkt. 8.) Accordingly, a certificate of default was entered as to Defendant Crumbsie on June 12, 2012. (Dkt. 16.)

1

explained below, the Motion to Dismiss [dkt. no. 9] is GRANTED in part and DENIED in part.

## JURISDICTION

This Court has jurisdiction over Plaintiff's section 1983 claims pursuant to 28 U.S.C. §§ 1331 & 1343. The Court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## BACKGROUND

### I. Procedural History

Plaintiff filed this Complaint on January 13, 2012. (Dkt. no. 1.) On April 13, 2012, Plaintiff filed a First Amended Complaint. (Dkt. no. 4.) On May 15, 2012, Defendant Westchester County filed the instant Motion to Dismiss on behalf of itself and defendant C.O. Jane Doe. Plaintiff filed her opposition on May 28, 2012. (Dkt. no. 14.) Defendant Westchester County filed its reply on June 5, 2012. (Dkt. no. 15.)

### II. Nature of the Dispute

Plaintiff is a citizen of Ecuador, residing in the State of New York. (First Am. Compl. ("FAC") ¶ 11.) On March 14, 2011, Plaintiff was arrested and detained at the Westchester County Jail ("WCJ"). (FAC ¶ 15.) During the intake process at the WCJ, Plaintiff self-identified as a pre-operative transgender female

with breast implants living life as a female.[2] (Id.) Following this disclosure, Plaintiff was placed in strict protective custody. (Id.)

Sometime in June 2011, Plaintiff was approached by an officer of the WCJ and informed that Plaintiff could request a transfer from strict protective custody to protective custody, which would provide equivalent protection but allow additional freedom of movement. (Id. at ¶ 16.) Plaintiff was transferred to protective custody soon after, though she remained in the same housing assignment. (Id. at ¶ 17.)

On August 18, 2011, Plaintiff requested a broom from Defendant Crumbsie, who at the time was acting as a trustee of the prison. (Id. at ¶ 20.) Defendant Crumbsie retrieved a broom and either opened or asked Defendant C.O. Jane to open the door to Plaintiff's cell. (Id. at ¶ 23.) Defendant Crumbsie then returned to Plaintiff's cell, handed her the broom, and watched as Plaintiff swept the cell. (Id. at ¶ 24.) When Plaintiff had finished, she handed the broom back to Defendant Crumbsie, who then asked to see Plaintiff's breasts. (Id.) Plaintiff refused. (Id. at ¶ 25.)

---

[2] Plaintiff identifies herself throughout the First Amended Complaint as a transgender female. See e.g. (First Am. Compl. ("FAC") ¶¶1, 15, and 22.) In deference to Plaintiff's determination of her gender identity, the Court adopts the use of the feminine pronoun in referring to Plaintiff throughout this opinion.

3

Defendant Crumbsie then stepped into the cell and forcibly grabbed Plaintiff's breasts. (Id.) Plaintiff resisted, but Defendant Crumbsie proceeded to expose himself and directed Plaintiff to perform oral sex on him. (Id.) Plaintiff again refused, but Defendant Crumbsie grabbed Plaintiff's hand and placed it on his genitals. (Id. at ¶ 26.) Though Plaintiff continued to resist, Defendant Crumbsie removed Plaintiff's garment and attempted to penetrate Plaintiff from behind – injuring Plaintiff's knee in the process. (Id.) Due to her injured knee, Plaintiff sat down on the bed. (Id. at ¶ 27.) Defendant Crumbsie then grabbed Plaintiff's head and forced Plaintiff to perform oral sex, injuring Plaintiff's mouth and throat. (Id.)

Eventually, Defendant Crumbsie released Plaintiff and exited the cell after warning Plaintiff not to report the incident. (Id.) Plaintiff did report the assault and an investigation was conducted by the WCJ Special Investigations Unit. (Id. at ¶ 28.) At some point during the course of that investigation, a member of the Special Investigations Unit informed Plaintiff that Defendant Crumbsie had a history of violent behavior and gang affiliation. (Id.) Plaintiff then brought this action, claiming violation of her rights by defendants Crumbsie, Westchester County, and C.O. Jane.

### III. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all factual allegations made in the complaint and draws all reasonable inferences in favor of the plaintiff. See ATSI Commc'ns v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). To survive the motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), meaning that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Conversely, a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is not sufficient. Id. (quoting Twombly, 550 U.S. at 555).

### DISCUSSION

### I. Sovereign Immunity and Municipal Liability

State governments may not be sued in federal court unless they have waived their sovereign immunity under the Eleventh Amendment or Congress has abrogated the immunity under Section 5 of the Fourteenth Amendment. Tennessee v. Lane, 541 U.S. 509, 518 (2004); Lapides v. Bd. of Regents, 535 U.S. 613, 618-19 (2002); see also Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ., 466 F.3d 232, 236 (2d Cir. 2006). Municipal entities,

however, cannot claim sovereign immunity. See Monell v. New York City Dept. of Social Serv., 436 U.S. 658, 690 n.54 (1978). Nevertheless, a municipality or municipal corporation is liable only if a plaintiff can make a sufficient showing as to two elements. First, the plaintiff must "prove the existence of a municipal policy or custom." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985); Jones, 557 F.Supp.2d at 416-17. "Second, the plaintiff must establish a causal connection - an 'affirmative link' - between the policy and the deprivation of h[er] constitutional rights." Id.

### A. Municipal Policy or Custom

A municipal policy or custom may be shown where a plaintiff successfully alleges (1) a formal policy officially endorsed by the municipality; (2) actions or decisions of government officials responsible for establishing the policies that allegedly violated the plaintiff's civil rights; (3) a "practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials;" or (4) a failure by government officials to properly train or supervise subordinates that amounts to deliberate indifference to the plaintiff's rights. Jones, 557 F.Supp.2d at 417. A municipality is equally responsible "whether [an] action is to be taken only once or to be taken repeatedly" so long as the "action is directed by those who establish governmental

6

policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986).

In the absence of a formal policy, a plaintiff may rely on "the theory that the conduct of a given official represents official policy," if the plaintiff can "establish that element as a matter of law." Id. at 57-58. An inference of municipal policy may also arise from "informal acts or omissions of supervisory municipal officials." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); Turpin v. Mailet, 619 F.2d 196, 200 (2d Cir. 1980). Issues of "authorization, approval, or encouragement" are general questions of fact.[3] Turpin, 619 F.2d at 201.

Here, the degree of supervision accorded to trustees within a correctional facility is determined by the chief administrative officer of the facility.[4] See N.Y. Comp. Codes R. & Regs. tit. 9, § 7003.3(d) ("[T]he chief administrative officer shall determine the type and manner of supervision to be provided to trustees while such trustees are confined in a

---

[3] It is unnecessary to analyze Plaintiff's claims under a "failure to train" rubric because Plaintiff's complaint contains no such allegations. See City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989); Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007).

[4] Whether an official has final policymaking authority is a legal question answered by reference to state law. See Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (citing McMillian v. Monroe County, 520 U.S. 781, 786 (1997)). The official need only be "responsible under state law for making policy in that area of the municipality's business." Id. (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 174 (1988)) (emphasis in original). The chief administrative officer of the county prison satisfies this criterion.

7

facility housing area housing only trustees."); id. at § 7003.4(d) ("The chief administrative officer shall determine the type and manner of supervision to be provided to trustees while such trustees are outside their facility housing areas."). Drawing all inferences in favor of the non-movant, the facts alleged in the complaint are sufficient to support the inference that defendants Westchester County, C.O. Jane, and – to the extent that his conduct was in accordance with that expected of a WCJ trustee – Crumbsie acted pursuant to municipal policy or custom during all relevant times.

### B. Causation

Plaintiff must also adequately allege causation, however. "Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, Monell prohibits a finding of liability . . . ." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (citing Monell, 436 U.S. at 694 n. 58). Causation for purposes of Monell liability is akin to proximate causation in tort law. Cash v. County of Erie, 654 F.3d 324, 342 (2d Cir. 2011), cert. denied, 132 S. Ct. 1741; see also Oklahoma City v. Tuttle, 471 U.S. 808, 833 n. 9 (1985) (Brennan, J., concurring).

Even if municipal policy set in motion the events that culminated in the harm to Plaintiff, more is required to establish the requisite causal link. See Deskovic v. City of Peekskill, 673 F.Supp.2d 154, 162 (S.D.N.Y. 2009). A

municipality is liable under section 1983 only if the "moving force behind that violation was an official policy or custom." Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citing Monell, 436 U.S. at 690-94). Although Defendant Crumbsie's intentional misconduct was facilitated by his status as a trustee of the prison, it cannot be said – and Plaintiff does not allege – that the municipal policies governing trustees was a moving force behind the violation of Plaintiff's rights. Rather, the reasonable conclusion is that Defendant Crumbsie took advantage of his superior position within the prison to commit the assaults in question. Because Plaintiff does not sufficiently allege a causal link between a municipal policy and the violation of her rights, Plaintiff's claim for excessive force (Count I) must be dismissed.

Plaintiff's claim for a failure to protect (Count II), however, which turns on a failure to fulfill a protective duty, survives scrutiny under Monell. Drawing all reasonable inferences in Plaintiff's favor, the Court must assume that Westchester County and C.O. Jane fulfilled the duties imposed by municipal policy and custom with respect to supervision and regulation of inmates and trustees. Because Plaintiff alleges that this policy was the cause of her injuries, Plaintiff has sufficiently alleged causation with respect to Count II. The Court next considers the substance of this claim.

9

**II.  Plaintiff's Section 1983 Claim for Failure to Protect**

"Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)). In this case, Plaintiff brings a claim for a failure to protect, implicitly relying on the Eight Amendment.[5] Applicable to the states through the Due Process Clause of the Fourteenth Amendment, the Eighth Amendment proscribes "cruel and unusual punishments." U.S. Const. amend. VIII; Rhodes v. Chapman, 452 U.S. 337, 344-45 (1981). As a corollary, the Eighth Amendment also requires prison officials to "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526-27 (1984), and imposes a duty to protect inmates from violence at the hands of other prisoners. See Farmer v. Brennan, 511 U.S. 825, 833 (1994); Hendricks v. Coughlin, 942 F.2d 109, 113 (2d Cir. 1991).

Plaintiff must demonstrate two conditions in order to state a cognizable failure to protect claim under § 1983, (1) "that [s]he [wa]s incarcerated under conditions posing a substantial risk of serious harm" and (2) that prison officials acted with

---

[5] Technically, the Eighth Amendment may not control here because it appears Plaintiff was a pretrial detainee at the time of the alleged violation. This distinction is of no moment, however, as "an unconvicted detainee's rights are at least as great as those of a convicted prisoner." Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996); see also Mercado v. City of New York, No. 8-CIV-2855, 2011 WL 6057839, at *4 (S.D.N.Y. Dec. 5, 2011).

"deliberate indifference" to h[er] safety." Warren v. Goord, 476 F.Supp.2d 407, 410 (S.D.N.Y. 2007) (quoting Farmer, 511 U.S. at 832); Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 620 (2d Cir. 1996). Deliberate indifference means that the relevant official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and in fact "dr[e]w the inference." Farmer, 511 U.S. at 837. In other words, the prison official must have "ha[d] knowledge that an inmate face[d] a substantial risk of serious harm and he disregard[ed] that risk by failing to take reasonable measures to abate the harm." Hayes, 84 F.3d at 620.

Plaintiff alleges that officials at the WCJ acted with deliberate indifference to her safety because jail officials knew that she was a likely victim and allowing Defendant Crumbsie access to her as a trustee posed a significant risk to her safety. (FAC ¶¶ 41-42.) Defendant Westchester County responds that it was not reasonably foreseeable that Defendant Crumbsie would attack Plaintiff. (See Def.'s Mem. of Law in Supp. of Mot. to Dismiss at 3-4.) As an initial matter, the argument that more than mere knowledge of Plaintiff's transgender status was required to put Defendant on notice of Plaintiff's vulnerability is spurious. Cf. Powell v. Schriver, 175 F.3d 107, 115 (2d Cir. 1999) ("In our view, it was as obvious in 1991 as it is now that under certain circumstances

11

the disclosure of . . . transsexualism could place that inmate in harm's way."). This is especially true in light of the WCJ's decision to place Plaintiff in special protective custody immediately following intake. Moreover, even if gang affiliation is not foreseeably related to an assault on Plaintiff, a history of violence certainly is. Drawing all inferences in favor of the non-movant, the Court cannot conclude that Plaintiff has failed to state a claim for a failure to protect.

### III. Plaintiff's Supplemental State Law Claims

In addition to claims under section 1983, Plaintiff also alleges state law claims predicated on a violation of N.Y. Correction L. §§ 137(5) & 500-k and state tort claims for negligence, gross negligence, and respondeat superior. The Court considers these in turn.

#### A. N.Y. Correction Law

Section 137(5) of the N.Y. Corrections Law provides, in relevant part, that "[n]o inmate in the care or custody of the department shall be subjected to degrading treatment, and no officer or other employee of the department shall inflict any blows whatever upon any inmate, unless in self defense, or to suppress a revolt or insurrection." Id. (McKinney 2012). Section 500-k makes this prohibition applicable to all county jails as well. N.Y. Correction L. § 500-k (McKinney 2012). Plaintiff

claims Defendant Crumbsie, acting under color of state law, violated this provision.[6]

Irrespective of the merits of the parties' arguments, Plaintiff herself has foreclosed relief as to this claim. Plaintiff has indicated the she seeks only a declaratory judgment and does not pray for damages. (FAC at 9; Pl.'s Mem. of Law in Opp. to Mot. to Dismiss at 13.) Defendant Westchester County argues that declaratory judgment is inappropriate when the alleged wrong has already been committed. The County is correct. "[D]eclaratory relief is intended to operate prospectively. There is no basis for declaratory relief where only past acts are involved." Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Group, Inc., No. 02-CIV-10338, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003); see also Gianni Sport Ltd. v. Metallica, No. 00-CIV-0937, 2000 WL 1773511, at *4 (S.D.N.Y. Dec. 4, 2000). Because Plaintiff seeks only declaratory relief, the claim for a violation of section 137 (Count IV) must be dismissed.

---

[6] At the outset, Defendant Westchester County argues that section 137 contains no express or implied cause of action. (See Def.'s Mem. of Law in Supp. of Mot. to Dismiss at 5.) The Court notes that other courts have allowed challenges predicated on this statute. See, e.g., Abreu v. Nicholls, No. 04-CIV-7778, 2007 WL 2111086 at *6-7 (S.D.N.Y. July 24, 2007), aff'd in part, vacated in part, 368 F. App'x 191 (2d Cir. 2010) (treating a claim predicated on N.Y. Correction L. § 137(5) as a standalone state law claim); Martinez v. Robinson, No. 99-CIV-11911, 2001 WL 498407 at *4 (S.D.N.Y. May 10, 2001) (same); Parker v. Fogg, No. 85-CIV-177, 1994 WL 49696, at *9 (N.D.N.Y. Feb. 17, 1994) (same); Holloway v. State, 728 N.Y.S.2d 567, 569 (N.Y. App. Div. 2001) (same). Ultimately, however, the Court need not decide whether a right of action exists under section 137.

### B. Official Immunity Under State Law

Assuming without deciding that Plaintiff has adequately pled her remaining state law claims, these claims must still be dismissed because the relevant parties are shielded by the doctrine of official immunity.[7] "[O]fficial immunity is designed to promote the effective administration of government affairs by ensuring that government officials are 'free to exercise their duties unembarrassed by the fear of damage suits.'" Murray v. Northrop Grumman Info. Tech., Inc., 444 F.3d 169, 174 (2d Cir. 2006) (citing Barr v. Matteo, 360 U.S. 564, 571 (1959)). Exercises of discretion by government officials are absolutely immune from liability, except for purely ministerial actions. Pryor v. State, 937 N.Y.S.2d 734, 735 (N.Y. App. Div. 2012) (quoting Metz v. State of New York, 927 N.Y.S.2d 201 (N.Y. App. Div. 2011). Qualified immunity shields the actions of government officers given a reasonable basis and the absence of bad faith. Cuoco v. U.S. Bureau of Prisons, No. 98-CIV-9009, 2003 WL 22203727, at *5 (S.D.N.Y. Sept. 22, 2003); see also Kravitz v. Police Dept. of City of Hudson, 728 N.Y.S.2d 267, 269 (N.Y. App. Div. 2001).

---

[7] This discussion pertains only to absolute and qualified immunity with respect to Plaintiff's state law claims. A municipality may not assert official immunity as a defense to the violation of a constitutional right. See Owen v. City of Independence, Mo., 445 U.S. 622, 649 (1980).

Count III alleges negligence and gross negligence on the part of Defendants Westchester County and C.O. Jane Doe. In New York, "where . . . [prison] employees act under the authority of and in full compliance with the governing statutes and regulations . . . their actions constitute discretionary conduct of a quasi-judicial nature for which the State has absolute immunity." Arteaga v. State, 527 N.E.2d 1194, 1195 (N.Y. 1988). This immunity extends to cases where prison employees undertook functions that were judicial or prosecutorial in nature. See Cuoco, 2003 WL 22203727, at *5 (collecting cases). "[D]iscretionary decisions in furtherance of general policies and purposes where the exercise of reasoned judgment can produce different acceptable results," Arteaga, 527 N.E.2d at 1198, however, are also entitled to absolute immunity. See Holloway v. State, 728 N.Y.S.2d 567, 568 (N.Y. App. Div. 2001) (holding that a "cell frisk" was entitled to absolute immunity).

Plaintiff alleges negligence on the basis of (1) the decision to persuade Plaintiff to enter protective custody; (2) the designation of Defendant Crumbsie as a trustee despite his gang affiliation and violent history; and (3) decisions related to the degree of supervision accorded Defendant Crumbsie in the performance of his trustee duties.[8] (See FAC ¶¶ 44-53.) "It is

---

[8] Plaintiff also alleged that C.O. Jane was negligent by failing to remain alert at her post. (FAC ¶ 47.) The First Amended Complaint, however, offers only conjecture to support this claim.

well established that with respect to its correctional facilities, the State [of New York] has a duty to use reasonable care to protect its inmates from foreseeable risks of harm, including risks of attack by other prisoners." Colon v. State, 620 N.Y.S.2d 1015 (N.Y. App. Div. 1994). The discretionary decisions identified by Plaintiff, however, are entitled to absolute immunity and cannot form the basis of an action for negligence or gross negligence.

Even if the Court were to find that these decisions fell outside the discretionary scope of absolute immunity, they are entitled to qualified immunity. "Under New York law, qualified immunity shields the actions of government officers from tort liability 'except where there is bad faith or the action taken is without [a] reasonable basis.'" Cuoco, 2003 WL 22203727, at *5 (quoting Artega, 527 N.E.2d at 1194). In order to defeat liability, "[t]he defendant must establish that he [or she] had an objectively reasonable belief that his [or her] act violated no clearly established rights." Kravitz, 728 N.Y.S.2d at 269 (quoting Young v. Selsky, 41 F.3d 47, 54 (2d Cir. 1994)). Plaintiff does not allege bad faith or claim that Plaintiff's transfer to protective custody was without any reasonable basis.[9] State law also recognizes qualified immunity with respect to the

---

[9] Indeed, Plaintiff herself made the decision to transfer to protective custody on the basis that she would enjoy greater mobility.

16

discretionary selection of Defendant Crumbsie as a "trustee". Cf. Schittino v. State, 692 N.Y.S.2d 760, 763 (N.Y. App. Div. 1999) ("To the extent that claimant argues that Gaines' violent propensities and inmate disciplinary history rendered him unsuitable for duties as a 'feed-up worker', the State's discretionary decision to employ Gaines in that capacity is insulated by a qualified immunity."); C. v. State, 591 N.Y.S.2d 431, 432 (N.Y. App. Div. 1992) (holding that the selection and assignment of an inmate to "porter" and "feed-up" the duties in a segregated unit of the prison was a discretionary act protected by qualified immunity). Consequently, Plaintiff's claim for negligence or gross negligence (Count III) must be dismissed.

Count V alleges that Westchester County is liable for all torts committed by C.O. Jane in the exercise of her employment. Under New York law, however, "the duty and function of keeping a jail are plainly and properly governmental in character, and fall within the rule that municipal corporations are not liable for acts done and powers exercised in that capacity." Eddy v. Vill. of Ellicottville, 54 N.Y.S. 800, 804 (N.Y. App. Div. 1898). "[W]hile the trustees and other officers might, by illegal and unwarranted exercise of power, render themselves individually liable, that would not render the town liable." Id. (quoting Town of Odell v. Schroeder, 58 Ill. 353, 356 (1871)).

Accordingly, Plaintiff's respondeat superior claim (Count V) against must be dismissed.

## CONCLUSION

In light of the above discussion, the Court finds that Plaintiff has failed to state a claim as to Counts I, III, IV, and V because these allegations do not "plausibly give rise to an entitlement to relief," Iqbal, 556 U.S. at 679. However, Plaintiff has stated a claim as to Count II. Accordingly, the defendants' Motion to Dismiss the First Amended Complaint [dkt. no. 9] is hereby GRANTED as to Counts I, III, IV, and V and DENIED as to Count II.

**SO ORDERED:**

*[signature]*

**LORETTA A. PRESKA**
**CHIEF UNITED STATES DISTRICT JUDGE**

Dated:   New York, New York
         January 25, 2013